603 A.2d 1371

**IMPERIAL HOTEL, INC., et al.**

v.

**BELL ATLANTIC TRI–CON LEASING CORPORATION.**

**No. 977, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

April 9, 1992.

267

R. Stewart Barroll (Hoon & Barroll, on the brief), Chestertown, for appellants.

Douglas A. Rubel (Jordan M. Spivok and Protas & Spivok, Chartered, on the brief), Bethesda, for appellee.

Argued before MOYLAN, FISCHER and HARRELL, JJ.

HARRELL, Judge.

On or about 11 July 1990, Bell Atlantic Tri–Con Leasing Corporation (hereinafter Bell Atlantic) obtained a default judgment in the Superior Court for Bergen County, New Jersey, against appellants, Imperial Hotel, Inc., George W. Dean, and Jane Dean. On 11 February 1991, Bell Atlantic filed a motion in the Circuit Court for Kent County, Maryland, seeking to register and enforce the New Jersey judgment.

Appellants filed an omnibus motion which basically sought to deny recognition, registration, and enforcement of the New Jersey judgment on the ground that the New Jersey court lacked personal jurisdiction over appellants. Ultimately, the circuit court denied all relief requested by the appellants, with the exception of their request to stay enforcement of the foreign judgment. The circuit court concluded that it would stay enforcement of the New Jersey judgment if, prior to 15 July 1991, appellants posted a $30,000 bond with the circuit court and provided proof that they had moved, in the New Jersey court, to set aside the New Jersey judgment. The circuit court ruled that if appellants failed to comply with these conditions, the motion to stay would be denied.

On 13 June 1991 appellants noted this appeal. The sole issue presented for our consideration is whether the circuit court erred in requiring the appellants to litigate in New Jersey the issue of personal jurisdiction.

## Facts

Appellant Imperial Hotel, Inc. (hereinafter Imperial Hotel) is a Maryland corporation that was created in 1985 by appellants George and Jane Dean, when they purchased a 12–room hotel on High Street in Chestertown, Maryland. All of the stock of the corporation belongs to Mr. and Mrs. Dean. Appellee, Bell Atlantic, is a Delaware corporation with an office located in Bergen County, New Jersey. It is engaged in the business of leasing office equipment.

In 1985 the parties executed two leases relating to a telephone system installed by Bell Atlantic in the Imperial Hotel. Various problems arose regarding the operation of the telephone system and, eventually, appellants ceased making the lease payments to Bell Atlantic. On 31 October 1989, Bell Atlantic filed a civil action in the Superior Court of Bergen County, New Jersey for sums allegedly due by appellants under the lease agreements and the Deans' personal guarantees.

Proof of personal service of the summons and complaint on appellants by a deputy sheriff for Kent County, Maryland was filed in the New Jersey action. On 9 February 1990, when appellants failed to answer or otherwise defend against the action, Bell Atlantic, pursuant to New Jersey rules of civil procedure, requested the clerk of the New Jersey court to enter an order of default. On 11 July 1990, a final default judgment was entered by the clerk against appellants in the amount of $29,502.10.

On 11 February 1991, Bell Atlantic filed an action in the Circuit Court for Kent County seeking to enforce the New Jersey judgment. Appellants responded with a very broad and general motion titled "Motion to Stay Enforcement of Foreign Judgment and Other Relief." In describing this motion at the hearing, appellants' counsel stated that "[w]hat I did in [an] abundance of caution was ask for everything including the kitchen sink." The motion contained a request for the court to (1) grant the motion; (2) stay enforcement of the New Jersey judgment pursuant to Md.Cts. & Jud.Proc.Code Ann. § 11–804(b); (3) vacate the New Jersey judgment; (4) dismiss the action; and (5) grant such other relief as the court deemed appropriate. Notwithstanding the various forms of relief requested, the sole argument underlying appellants' motion was that "the New Jersey court lacked jurisdiction to entertain the suit."

### Discussion

Appellants argue that the circuit court erred in requiring them to litigate in New Jersey the issue of

personal jurisdiction. They maintain that the circuit court should have decided whether the New Jersey judgment was entitled to enforcement under the Uniform Enforcement of Foreign Judgments Act, Md.Cts. & Jud.Proc.Code Ann. § 11–801 *et seq.* ("the Act"). We agree and explain.

Article IV, section 1 of the United States Constitution provides, in relevant part, that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." The Supreme Court has consistently recognized that, in order to fulfill this constitutional mandate, "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Ins. Guaranty Assoc. et al.*, 455 U.S. 691, 704, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558 (1982) (citations omitted).

 Obviously, the basic structure of our Nation as a union of States dictates some limitations on the Constitution's full-faith-and-credit principles. "Chief among these limitations is the caveat, ... that a 'judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment.' " *Id. quoting Durfee v. Duke*, 375 U.S. 106, 110, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963). In a suit to enforce the judgment of another state the jurisdiction of the foreign court is open to judicial inquiry. *See generally Renwick v. Renwick*, 24 Md.App. 277, 330 A.2d 488 (1975); *Van Wagenberg v. Van Wagenberg*, 241 Md. 154, 215 A.2d 812 (1966). When "the matter of fact or law on which jurisdiction depends *was not litigated in the original suit* it is a matter to be adjudicated in the suit founded upon the judgment." *Adam v. Saenger*, 303 U.S. 59, 62, 58 S.Ct. 454, 456, 82 L.Ed. 649 (1938) (emphasis supplied). Accordingly, before one state court is bound by a judgment rendered by a court in another state, it may inquire into the propriety of a foreign court's exercise of jurisdiction. If

the foreign court did not have jurisdiction, full faith and credit need not be given.

In the instant case, the trial judge did not believe that he had the authority to inquire into the propriety of the New Jersey court's exercise of jurisdiction over the appellants. At the hearing on appellants' motion the trial judge stated:

> The first thing as far as this validity [of the judgment] is concerned is to me the question of where its validity should be determined and at what point. Obviously, the first opportunity to have done so and for the defendants to say, 'Well, you don't have any jurisdiction over me and I don't have anything to do with the State of New Jersey.' would have been up there and they could have hired counsel to enter a limited appearance for the purpose of, of raising that question. It may or may not be that New Jersey did have jurisdiction over them and that they had minimal or minimum contacts sufficient to satisfy New Jersey. Now, one thing I am certain of though is that, as a matter of comity and deference, New Jersey should be given the first opportunity to pass upon that and not some sister state.
>
> \* \* \* \* \* \*
>
> To be blunt and turning the situation around, if this same thing had happened here, and we sent a judgment to New Jersey, I wouldn't be too happy with some judge up there sitting up there and saying, 'Well, those people down in Kent County don't know what they were doing.' I think it is rather arrogant and presumptuous of me to presume that Burgen [sic] County and the State of New Jersey didn't know what they were doing and that they didn't comply with their own laws and rules. I have to, I think the concept of the Constitution is to say that presumptively they did.

 The trial judge failed to apply the proper law in this case. In Maryland, an authenticated copy of a record is *prima facie* evidence of jurisdiction and the judgment or decree must be presumed valid until it is declared invalid by

a competent court. *Brewster v. Brewster,* 204 Md. 501, 505, 105 A.2d 232 (1968). The courts of this State are not bound, however, by determinations of jurisdiction made by courts of other states. *Staley v. Staley,* 251 Md. 701, 705, 248 A.2d 655 (1968); *Roach v. Jurchak,* 182 Md. 646, 649–59, 35 A.2d 817 (1944). Rather, they may make their own independent examination. *Staley,* 251 Md. at 705, 248 A.2d 655; *Renwick,* 24 Md.App. at 287, 330 A.2d 488. The power of the state of Maryland to examine into whether, under New Jersey law, the court of that state which rendered the judgment had authority to do so, is beyond question. *Van Wagenberg,* 241 Md. at 161, 162, 215 A.2d 812 (and cases cited therein) ("Unlike the federal courts, we cannot refer the question of law to the state where it originated.")

In fact, Maryland's Uniform Enforcement of Foreign Judgments Act, which provides the mechanism by which a judgment creditor or the attorney of a judgment creditor may enforce a foreign judgment, requires the trial judge to make a preliminary determination that the foreign judgment is entitled to full faith and credit in Maryland. Section 11–801 provides:

> In this subtitle, "foreign judgement" means a judgment, decree, or order of a court of the United States or of any other court *that is entitled to full faith and credit in this State.*

Md.Cts. & Jud.Proc.Code Ann. § 11–801 (Emphasis added.) Consequently, in an action to enforce a foreign judgment, the statute places the onus on the trial judge of the "receiving" forum to determine whether the foreign court properly exercised jurisdiction.

The trial judge does not have the discretion to require the litigants to obtain such a determination from a court in the foreign jurisdiction.[1] We recognize that a reasonable argu-

---

1. We note that, in the case before us, there is no *res judicata* issue because the question of jurisdiction was not litigated in the New Jersey court. If the issue of personal jurisdiction had been raised and fully adjudicated in New Jersey, the doctrine of *res judicata* could

ment can be made that it is inappropriate, and perhaps a course charted with potential for going astray, to require a Maryland court, trained in Maryland law, to decide an issue by the application and construction of New Jersey law. " 'Certainly, we cannot speak with the same confidence of the intention and the policy of the legislature of another state as we might of those of our own.' " *Van Wagenberg,* 241 Md. at 162, 215 A.2d 812 (citations omitted). However, we feel this result is compelled where the jurisdictional challenge is unlitigated in the foreign jurisdiction and the Maryland statute places the burden on our courts to determine entitlement in the first instance. Accordingly, we reverse the trial court's holding and remand this case to the Circuit Court for Kent County to determine the issue of whether the New Jersey court had jurisdiction over the appellants.

For the guidance and solace of the trial court, we pause to observe that there is a two-step process involved in examining New Jersey's exercise of jurisdiction in the case at hand. First, the trial court must determine whether the New Jersey statute purports to authorize the assertion of personal jurisdiction. It must be determined whether the New Jersey long-arm statute and rules, purport to extend to the full limits allowed by constitutional due process.[2]

---

have served to bar the appellants from relitigating the issue in Maryland. The Supreme Court has previously held that the doctrine of *res judicata* must be applied to questions of jurisdiction in cases arising in state courts involving the application of the full faith and credit clause where, under the law of the state in which the original judgment was rendered, such adjudications are not susceptible to collateral attack. *See Sherrer v. Sherrer,* 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948); *American Surety Co. v. Baldwin,* 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932).

2. Not all states aspire to this. For example, New York's long-arm statute was found not to extend jurisdiction as far as may be constitutionally permitted. *Roth v. El Al Israel Airlines, Ltd.,* 709 F.Supp. 487, 489 (S.D.N.Y.1989); *Interface Biomedical Laboratories, Corp. v. Axiom Medical, Inc.,* 600 F.Supp. 731, 734 n. 3 (1985) (and cases cited therein). The determination of this issue, however, must be made by the circuit court on remand.

And secondly, it must be determined whether the exercise of jurisdiction permitted by the statute violates the due process clause of the fourteenth amendment.

With regard to the second consideration, we recognize that the basic principle of due process is that the appellants must have certain minimum contacts with New Jersey such that the exercise of jurisdiction over them does not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The circuit court should determine whether the appellants' conduct was such that they should reasonably have anticipated being haled into court in New Jersey. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In making this determination the circuit court should examine the appellants' contacts with the state of New Jersey. The court should consider both the corporate status of appellant Imperial Hotel and the fact that the Deans were sued individually as personal guarantors under the lease agreements. The court should also consider the facts surrounding the formation of the contract, the appellants' dealings with Bell Atlantic representatives from New Jersey, the language of the agreement, the payment process, the amount of work conducted by the appellants in New Jersey, the amount of property owned by the appellants in New Jersey, and any other facts that would indicate whether any or all of the appellants had minimum contacts with the State of New Jersey such that the exercise of jurisdiction by the New Jersey court does not offend traditional notions of fair play and substantial justice.

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE TO PAY THE COSTS.