# ANNA C. BRAECKLEIN

## vs.

## ALFRED H. BRAECKLEIN.

*Alimony—Modification of Decree—Notice—-Practice on Appeal.*

Where, as in Maryland, alimony is regarded as a maintenance for the wife's support out of the husband's income, and not as a division of property, a court of equity has jurisdiction, in the case of a decree granting either a divorce *a vinculo* or *a mensa,* to modify that part of the decree providing for alimony. p. 38

Before passing an order modifying a previous decree granting alimony, there should be notice and an opportunity to show cause to the contrary. p. 39

Where the record did not indicate the circumstances under which an order modifying a decree for alimony was passed, *held* the case should be remanded without an affirmance or a reversal of the order, to the end that an opportunity be given to show cause to the contrary of the order if this was not previously afforded. p. 39

*Decided February 6th, 1920.*

Appeal from the Circuit Court of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Eugene Frederick,* with whom was *Harry B. Wolf* on the brief, for the appellant.

*Wm. Purnell Hall,* for the appellee.

Adkins, J., delivered the opinion of the Court.

On April 17th 1918, the original bill of complaint was filed by the appellant against the appellee, in which are alleged, the marriage of the parties; proper conduct of the wife; ill treatment and vicious conduct on the part of the husband; and the joint ownership of certain property, the income from which is alleged to be about $135.00 per month. It is further alleged that by reason of the irreconcilable differences between the parties, for the purpose of preserving said property and to protect the interests of the wife, a receiver ought to be appointed by the Court to manage and control the said property during the pendency of the suit, and to collect the rents, income and profits from said property and to pay the same into Court for the account of the parties to the suit, and that in the meantime the husband ought to be restrained and enjoined from collecting the rents, income or profits from said property or from otherwise interfering therewith. It is further alleged that the husband is a doctor and is in receipt of a yearly income of about $5,000.00, and that the wife is wholly destitute of means of supporting herself during the pendency of the suit, or of defraying the costs and expenses attending the prosecution of the same.

The prayer of the bill is for permanent alimony, alimony and counsel fees *pendente lite,* and for other and further relief.

On the same day it was ordered by the Circuit Court that a receiver be appointed to take charge of the said property and to collect the income therefrom under the direction of the Court pending the suit, and that the husband be restrained and enjoined from collecting said income in the meantime or from interfering therewith, unless cause to the contrary be shown on or before the 27th day of April, 1918.

On May third answer of appellee was filed in which he admitted the residence and marriage, denied the allegations of bill as to the proper behavior of appellant and as to his ill

treatment of her, and asserting that while he was ill and ex-
pected to die she left home without cause on his part, taking
with her all her effects, and money and property belonging
to him, and that by reason of her desertion he had to be re-
moved to the Johns Hopkins Hospital, where he remained
for a long time at an expense of about $500.00, and that
while he was in the hospital she entered their former home
and removed all his furniture therefrom, and has never re-
turned any part thereof. The answer further states that
appellee owns together with appellant as tenants by the en-
tireties the property mentioned in the bill, and five ground
rents aggregating $240 per annum income, and also the
dwelling house in which he and his wife formerly lived, and
in which he now occupies an office, the rest of the house
being unfurnished and not used; and also $2,800.00 earned
and deposited by him in the Central Savings Bank in his
name as trustee for himself and wife as joint owners, and
that all of the property standing as aforesaid in the names of
himself and wife as tenants by the entireties was paid for
with his own money, without any contribution on her part;
that the total net income from said property is much less
than $125.00 per month; that the alleged irreconcilable dif-
ferences are differences which did not originate with appel-
lee, and if such exist they were brought about entirely by the
wrongful and improper acts of the appellant; that no re-
ceiver is required to collect the rents, which rents appellee is
advised he has the legal right to collect. The answer denies
that he ever earned as much as $5,000.00 a year, although
before he was taken sick he had a good practice; that since
that he has not made as much as $50.00 a month. The an-
swer submits that the allegations of the bill do not present
a case within the jurisdiction of the Court or warrant the
Court in granting any of the relief prayed for.

Subsequently, on October 28th, 1918, the appellant filed a
petition alleging that since filing her bill of complaint she
has discovered that her husband has been guilty, since the

filing of said bill, of the crime of adultery, and praying that she be permitted to file an amended bill charging her husband with said crime and asking for a divorce *a vinculo matrimonii,* which by an order of Court she was permitted to do.

Whereupon appellant filed an amended bill with practically the same allegations as in the original bill, with the additional allegation that her husband has, without any just cause or reason, abandoned and deserted her, and has been guilty of the crime of adultery; and that she has not lived with him since she discovered said adulteries. In the amended bill the income from the properties owned by the parties as tenants by the entireties is alleged to be about $170.00.

The amended bill prays for a divorce *a vinculo matrimonii;* for permanent alimony; for alimony and counsel fees *pendente lite;* for the appointment of a receiver; and for further relief.

On this bill the Circuit Court passed an order that a receiver be appointed and that appellee be restrained and enjoined from collecting the income from said properties, or interfering therewith, unless cause to the contrary be shown on or before the 18th day of November, 1918.

In his answer filed January 13th, 1919, the appellee denies the charges of abandonment and adultery; claims that he is the absolute owner of the properties mentioned in the amended bill, together with other properties in said city; that in pursuance of his then intention to make a gift of an interest in said properties to the appellant, he caused said properties to be placed in their joint names, but that said properties were purchased with funds belonging exclusively to him, and he has always retained the absolute dominion and control over them and collected the income, and always has had the power of revocation over said partial gifts, and now declares that they are revoked, and that he will make proper application to have the deeds annulled and set aside to the end that said property may become vested in him absolutely. The answer

further states that the income from said property is so small as to be almost negligible, and denies that appellee is in receipt of a yearly income of anything like $5,000.00.

After the answer to the amended bill the next thing that appears in the record is the decree, which is as follows:

"This cause coming on for hearing, the original bill of complaint, answer and replication thereto, and the amended bill of complaint, answer and replication thereto, were by the court read and considered, and testimony on behalf of the plaintiff and defendant having been heard in open court and argument thereon, and the cause being submitted;

"It is thereupon by the Circuit Court of Baltimore City this 10th day of March, 1919, adjudged, ordered and decreed that the plaintiff, Annie C. Braecklein, be and she is hereby divorced *a vinculo matrimonii* from the defendant, Alfred H. Braecklein; and

"It is further adjudged, ordered and decreed that the defendant, Albert H. Braecklein, pay unto the said plaintiff, Annie C. Braecklein, the sum of eighteen ($18) dollars per week, accounting from the 24th day of February, 1919, as permanent alimony, and the further sum of two hundred and fifty ($250) dollars as a fee for the solicitor of the plaintiff; and

"It is further ordered and decreed that in the payment of the sum of eighteen ($18) dollars per week so ordered to be paid to the said Annie C. Braecklein, credit shall be allowed for such sums as are collected by the plaintiff from her share of the rents, issues and profits yielding to her in the division of the leasehold property and ground rents mentioned in these proceedings, to the end and intent that the said plaintiff may have a net weekly income of eighteen ($18) dollars. The household furniture mentioned in these proceedings to be divided equally between the parties of this cause; and

"It is further ordered and decreed that the defendant, Alfred H. Braecklein, account to the plaintiff, Annie C. Braecklein, for one-half of the sum collected

by him prior hereto up to and including the date of this decree, as rents, issues and profits of the property mentioned in these proceedings; and

"It is further ordered and decreed that the said plaintiff, Annie C. Braecklein, shall receive from the said defendant, Alfred H. Braecklein, one-half of all monies now standing to the credit of Julius H. Wyman and Harry B. Wolf, belonging to the parties to this cause; and

"It is further ordered and decreed that the defendant, Alfred H. Braecklein, pay the costs of these proceedings."

And then the order of August 1, 1919, as follows:

"Ordered by the Circuit Court of Baltimore City this first day of August, 1919, that the decree of this Honorable Court, dated the 10th day of March, 1919, in the above entitled cause, in so far as the payment of the sum of eighteen dollars ($18) per week as permanent alimony to the said Annie C. Braecklein by the defendant, Alfred H. Braecklein, be and the same is hereby rescinded and vacated."

The case is now before this Court on an appeal from the last mentioned order.

On the record in this case there are only two questions to be decided by us, viz.:

First. Had the Circuit Court of Baltimore City the power to strike out of the decree, after it became enrolled, the provision as to alimony, without a bill of review?

Second. If it had such power could it be exercised by said Court *sua sponte* and without notice to the appellant?

The first question we think is answered in the affirmative by the decision of this Court in *Emerson* v. *Emerson,* 120 Md. 584.

There it was urged that the decree of divorce a *vinculo matrimonii* in which alimony was allowed, having become enrolled, the provision as to alimony as well as every other

part of the decree came within the general rule that an enrolled decree is final upon the rights of the parties, and Courts have no power to change those rights except in cases not heard upon the merits, where it is alleged that the decree has been entered by mistake or surprise, or under such cir-cumstances as shall satisfy the Court, in the exercise of a sound discretion, that the enrollment should be discharged.

But this Court, speaking through JUDGE CONSTABLE, after an exhaustive review of the history of the jurisdiction of Courts in Maryland in divorce cases, and of the authorities in this and other States, said: "We are of the opinion that the better reasoning leads, irresistibly, to the conclusion that in States where (as in Maryland) alimony is regarded as a maintenance for the wife's support out of the income of the husband and not a division of property, the jurisdiction exists in the Courts of Equity to modify that part of the decree providing for alimony, whether the decree grants divorce *a vinculo* or *a mensa.*"

It remains to determine whether the striking out of the provision as to alimony in the present case by the lower Court, *sua sponte,* and without notice, was a reversible error.

On account of the entire absence of testimony from the record, and of all reference to the action of the Court below in regard to the appointment of a receiver and the manage-ment of the joint property after the date of the decree, we have recited at some length the allegations of the original and amended bills and answers and the provisions of the orders passed prior to the decree as throwing some light upon the conditions surrounding this case.

It will be noted that the provision in the decree for $18 a week alimony is not in addition to the wife's part of the income from the joint property, but that said allowance is to be credited with "such sums as are collected by the plain-tiff from her share of rents, issues and profits yielding to her in the division of the leasehold property and ground rents mentioned in these proceedings, to the end and intent that

the said plaintiff may have a net weekly income of eighteen ($18) dollars." So that if the allegation of the amended bill be true that "the total monthly income from said properties is about one hundred and seventy ($170) dollars," it might well be that the wife's share of the net income would amount to the full sum allowed as alimony, and that the lower Court fixed the alimony with reference to said income, and with the purpose of relieving the husband of any connection with the matter as soon as the exact amount of the income should be definitely ascertained under a receivership, and with the further purpose of establishing the principle of alimony in this case with a view of keeping the matter under the control of the Court in case of a falling off of income in the future; and that the order of August 1st was passed after the Court had satisfied itself either that the wife's part of the net income was equal to the sum fixed as alimony, or that, in view of the fact that the funds used for the purchase of the joint property were furnished entirely by the husband (if the allegation of the answer in that regard was supported by the weight of the testimony), it was not equitable in any event that the wife should receive more than half of the income from said property.

There should have been notice and an opportunity to show cause to the contrary before the passing of such an order. Ordinarily this is done on a petition. But inasmuch as the record does not indicate the circumstances under which the order was passed, the case will be remanded without an affirmance or a reversal of the order to the end that such an opportunity may be given if it has not actually been afforded.

*Case remanded without affirmance or reversal,*
*costs to abide the final result.*