590 A.2d 579

**Robert C. WILSON**

v.

**Marolyn C. WILSON.**

**No. 1251, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 31, 1991.

Harvey B. Steinberg (Kevin G. Hessler and Miller & Steinberg, on the brief), Rockville, for appellant.

Dorothy R. Fait (Barbara A. Kestenbaum and Fait & Malament, on the brief), Rockville, for appellee.

Argued before WILNER, C.J., and BISHOP, J., and JOHN W. SAUSE, Jr., Judge, Specially Assigned.

WILNER, Chief Judge.

Appellant, Robert C. Wilson, complains about an order of the Circuit Court for Montgomery County awarding his former spouse, Marolyn, *pendente lite* alimony and attorney's fees. We think that his complaint has partial merit.

The parties were married in Maryland on January 1, 1980. The marriage, a second for each of them, was childless.

In the summer of 1988, Robert obtained a job with the Federal Aviation Administration in Alaska. The position with FAA offered him an $11,000 increase in the $55,000 salary he was then earning. Marolyn accompanied Robert to Alaska in August, 1988, when he moved there to begin his new job. She remained in Alaska for only a week or so, however, and then returned to Maryland. From August 1988 through March 1989, Robert sent Marolyn $750 per month. The evidence showed that they had agreed on that sum. On March 7, 1989, Robert filed a Complaint for Divorce in the Superior Court for the State of Alaska.

Marolyn was served with process in Robert's action for divorce, and she retained an attorney in Alaska to represent her. She also, on March 27, 1989, filed an action in the Circuit Court for Montgomery County, seeking a limited divorce, *pendente lite* and permanent alimony, and a determination of her property rights. The two cases then proceeded along somewhat parallel lines.

In the Alaska case, Marolyn's attorney initially entered his appearance "for the limited purpose of challenging the court's jurisdiction in the ... action." In an Order entered June 21, 1989, the court rejected that challenge and denied Marolyn's motion to dismiss Robert's complaint. An amended order was entered on July 21, 1989, to clarify that Robert's complaint was "not dismissed to the extent of granting a decree of divorce, alimony and/or spousal support against [Robert] but is otherwise dismissed as to division of the marital assets and debts."

On September 20, 1989, the Alaska court entered an order of default against Marolyn by reason of her failure to plead

or otherwise defend the action. The default was limited, however, to "the granting of a decree of divorce and any order of alimony or spousal support against [Robert]." On December 13, 1989, Marolyn, through her attorney, filed a "Consent to Proceed" in the Alaska court, in which she consented "to [Robert] proceeding with the hearing on the divorce in this matter under the terms of the default previously entered on September 20, 1989, and the terms of Judge Carlson's amended order dated July 21, 1989." Five days later, the court heard the case and, based on the order of default, entered an order divorcing the parties, providing that "no alimony or spousal support is awarded either party," and providing further that "the matter of property division shall remain for resolution by the Circuit Court for Montgomery County, Maryland, where a suit for resolution of property rights is pending." [1]

While Robert was pursuing his action in Alaska, Marolyn was proceeding apace in Maryland. The first step was the referral of Marolyn's entitlement to alimony *pendente lite* and counsel fees to a Domestic Relations Master. On July 14, 1989, following a hearing three weeks earlier, the master filed his report recommending that alimony *pendente lite* be denied and that the question of counsel fees and costs be deferred. These recommendations were not based on any action by the Alaska court but rather on the premise that alimony *pendente lite* was "solely to allow the receiving party to maintain his or her needs pending a hearing on the merits" and that Marolyn had not demonstrated any

---

1. Upon motions by the parties, we allowed the record to be supplemented with two subsequent orders of the Alaska court. The first of these, entered January 7, 1991, ordered Marolyn not to seek alimony or spousal support in Alaska or any other State or the enforcement of any order for alimony or spousal support entered after December 18, 1989. The second order, entered April 9, 1991, stayed the enforcement of the January 7 order. We allowed these orders into the record because, from a reading of just the motions, we were unable to conclude that they were not relevant. Having now read the briefs and heard argument, we find that they indeed have no bearing on this appeal, especially as the January 7 order—the one that might conceivably have had some relevance—has been stayed.

such need. From her employment as a secretary, from rent paid to her by her son, and from tax refunds, she had a monthly disposable income of nearly $2,094 whereas her "reasonable and realistic expenses" amounted to only $1,987. The master also found that she had "substantial assets in the form of property in New York and I.R.A. accounts."

Marolyn filed exceptions, which were heard by the court on January 19, 1990. By that time, of course, the parties were no longer married. The Alaska divorce decree, as noted, had been entered December 18, 1989, a fact that was brought to the court's attention. Robert's attorney seemed to concede that the court might have authority to award *pendente lite* alimony up to the time of the Alaska decree, but he claimed that no alimony could be awarded after that date. The court was not impressed and, after concluding that the master had erred in some of his conclusions regarding Marolyn's income and expenses, entered an order on January 24, 1990 (which was modified by order entered February 9, 1990) sustaining her exceptions, directing Robert to pay *pendente lite* alimony of $750/month dating from April 1, 1989, entering judgment for a current arrearage of $7,500, and ordering Robert to pay a $750 attorney's fee and $171 in costs.

In this appeal from that order, Robert complains that:

(1) "The Circuit Court for Montgomery County exceeded its authority in granting pendente lite alimony and attorney's fees to Mrs. Wilson after the parties had already been divorced by foreign decree in a non-exparte proceeding, which decree expressly denied Mrs. Wilson alimony."

and

(2) "Assuming arguendo that the ruling of a sister [State] may be ignored, the Circuit Court for Montgomery County, Maryland abused its d[i]scretion in ordering alimony of $750.00 per month to Mrs. Wilson by failing to consider rental income she receives from her adult son

who makes $41,000 per year and who resides with her in the former marital home, when such rental income, coupled with the $33,000 per year she earns as a highly trained legal secretary exceed her reasonable needs."

In examining the first issue, we need to begin by making clear three basic premises. First, the Maryland court clearly had *in personam* jurisdiction over both Robert and Marolyn and subject matter jurisdiction over Marolyn's action. The fact that the court had *in personam* jurisdiction over Robert distinguishes this case, at least in part, from *Dackman v. Dackman,* 252 Md. 331, 250 A.2d 60 (1960). Second, the Alaska court also had *in personam* jurisdiction over both Robert and Marolyn, at least to the extent that it chose to exercise jurisdiction, notwithstanding Marolyn's argument to the contrary. Robert tells us that Alaska does not recognize "special appearances" and he therefore contends that the initial appearance of counsel, even for the limited purpose of challenging the court's jurisdiction, sufficed to assure the very thing it was designed to challenge. We need not address that argument, however, for it is clear beyond cavil that the subsequently filed "Consent to Proceed" sufficed to subject Marolyn to the Alaska court's jurisdiction to grant a decree of divorce and enter an order of alimony against Robert. In that regard, we reject Marolyn's argument that the "Consent to Proceed" is a meaningless irrelevancy and that it was somehow, in some unexplained way, required under the Alaska default procedure. Marolyn has presented us with no basis for such a conclusion. The Alaska divorce, therefore, was not granted *ex parte,* and that serves to distinguish this case from *Altman v. Altman,* 282 Md. 483, 386 A.2d 766 (1978) and *Komorous v. Komorous,* 56 Md.App. 326, 467 A.2d 1039 (1983).

The third basic premise is not a matter of jurisdiction but relates instead to the substantive nature of alimony. Under Maryland common law, alimony was (and is) an incident of marriage. Thus, as confirmed in *Altman v. Altman, supra,* 282 Md. at 490, 386 A.2d 766, "[t]he long-

standing rule in Maryland has been that the right to claim alimony is extinguished at the time of the severance of the marital relationship." The narrow departure from that rule made in *Altman* was to allow a spouse to obtain alimony following a foreign divorce where the divorce was obtained *ex parte*, in the absence of *in personam* jurisdiction by the foreign court over the spouse seeking the alimony. The general rule as to alimony has also been applied with respect to alimony *pendente lite, see Tabeling v. Tabeling,* 157 Md. 429, 437, 146 A. 389 (1929); *Staub v. Staub,* 170 Md. 202, 209, 183 A. 605 (1936); *Johnson v. Johnson,* 199 Md. 329, 338, 86 A.2d 520 (1952); and counsel fees, *Tome v. Tome,* 180 Md. 31, 37–38, 22 A.2d 549 (1941); *Borchert v. Borchert,* 185 Md. 586, 595–96, 45 A.2d 463 (1946).

■ Applying these principles, it seems clear to us that, up to the rendition of the Alaska divorce decree on December 18, 1989, the Maryland court had both the jurisdiction and the authority to award Marolyn *pendente lite* alimony and counsel fees, if necessary to allow her to maintain her Maryland action. It seems equally clear, in the circumstances of this case, that, although the Maryland court continued to possess jurisdiction, Marolyn lost her entitlement to receive *pendente lite* alimony or counsel fees for any period after dissolution of the marriage on December 18. Any such award for a period after December 18 would therefore be substantively erroneous.

The precise question, then, is whether the court had the authority *after* December 18 to award *pendente lite* alimony or counsel fees for a period *before* that date. The answer is supplied by *Upham v. Upham,* 238 Md. 261, 208 A.2d 611 (1965). There, as here, the husband moved from the marital abode in Maryland to accept employment in another State (Pennsylvania). Eight months later, the wife filed suit in Maryland for partial divorce but did not press the action. Subsequently, the husband obtained an absolute divorce in Pennsylvania. The wife, who had been served in Maryland by certified mail, moved to set aside the Pennsylvania decree. Her petition was denied, and eventually the

Pennsylvania appellate court affirmed the decree. After entry of the divorce decree and the denial of her petition to set it aside but before that denial was affirmed, the wife sought alimony *pendente lite* and counsel fees in Maryland. The Maryland court dismissed her action for partial divorce but directed the husband to pay costs and counsel fees for services rendered prior to entry of the Pennsylvania divorce decree. The Court of Appeals affirmed. After concluding that the Pennsylvania divorce decree terminated the wife's entitlement to alimony, it addressed the counsel fee question, stating at 265, 208 A.2d 611:

> "The final question, one raised by the husband, is whether the court erred in directing payment for counsel fees for services rendered prior to the entry of the Pennsylvania divorce decree. We find no error. *Tome v. Tome*, 180 Md. 31, 22 A.2d 549 (1941). Had the court awarded counsel fees for services rendered after the marriage was terminated, a different question would have been presented."

*See also Riley v. Riley*, 239 Md. 363, 366–67, 211 A.2d 748 (1965) and *Madaio v. Madaio*, 256 Md. 80, 82 n. 1, 259 A.2d 524 (1969).

Although *Upham* and *Riley* involved counsel fees rather than alimony *pendente lite*, the Court applied exactly the same rationale that governs alimony—i.e., the right to recovery terminates upon divorce—and, for that reason, we regard those cases as precedential. *Madaio*, in fact, concerned alimony.

We therefore conclude that, although the court had authority to grant *pendente lite* alimony for a period preceding December 18, 1989, it had no authority to grant such alimony for any period thereafter. Similarly, the court was empowered to allow a counsel fee for services rendered prior to December 18, but not afterward. On the merits of the matter, we are unable to conclude that the court erred in sustaining Marolyn's exceptions and continuing the $750 monthly amount which the parties themselves had earlier agreed was appropriate. Accordingly, we shall vacate so

much of the amended order that requires payment of alimony *pendente lite* after December 18, 1989 and remand the case for determinations as to (1) those costs and attorney's fees which were incurred prior to December 18, 1989, and (2) what, if any, part of the $7,500 judgment for arrearages represents *pendente lite* alimony due and payable after December 18, 1989. Based upon those determinations, the court may enter a new order in conformance with this Opinion.

ORDER MODIFIED; CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS IN CONFORMANCE WITH THIS OPINION; EACH PARTY TO PAY OWN COSTS.